UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
—————————————————————————

BRUCE D. PETRIE,

                   Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                 Defendant.

—————————————————————————

**REPORT AND
RECOMMENDATION**

08-CV-1289
(GLS/VEB)

## I. INTRODUCTION

Plaintiff Bruce Petrie filed several applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that he is unable to work due to various psychiatric impairments. The Commissioner of Social Security denied Plaintiff's applications.  Plaintiff, through his attorneys, Olinsky & Shurtliff, commenced this action on December 1, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's denial of SSI benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On September 16, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

## II. BACKGROUND

The relevant procedural history may be summarized as follows.  Plaintiff filed applications for DIB and SSI benefits on September 15, 2001, alleging disability since December 6, 2000. (T at 62-64).[1]  These applications were denied on October 27, 2003, after a hearing before an Administrative Law Judge ("ALJ"). (T at 272-82).  Plaintiff did not appeal this denial. (Plaintiff's Brief, Docket No. 12, at p. 2).  On August 24, 2004, Plaintiff filed applications for DIB and SSI benefits, alleging disability since October 28, 2003.  These applications were denied initially by the Commissioner and Plaintiff did not request a hearing or otherwise pursue an appeal.  (Plaintiff's Brief, Docket No. 12, at p. 2).

Plaintiff once again applied for DIB and SSI benefits on July 19, 2005, claiming that he had been disabled since December 27, 2000. (T at 305-07).  The applications were denied initially (T at 284-88) and Plaintiff requested a hearing before an ALJ. (T at 289). On September 18, 2007, Plaintiff appeared, along with his attorney, at a hearing conducted in Syracuse, New York, before ALJ Joseph G. Medicis, Jr. (T at 448-65).  On October 25, 2007, ALJ Medicis issued a written decision denying the applications for DIB and SSI benefits.  (T at 19-32). The ALJ's decision became the Commissioner's final decision on September 26, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 9-11).

Plaintiff, through counsel, commenced this action on December 1, 2008. (Docket No. 1).  The Commissioner interposed an Answer on April 15, 2009.  (Docket No. 10).  Plaintiff filed a supporting Brief on July 2, 2009. (Docket No. 12).  The Commissioner filed a Brief

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

in opposition on September 14, 2009. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct.

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

_____

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ initially considered whether the 2003 decision and 2005 determination denying Plaintiff's earlier applications for DIB and SSI benefits could be reconsidered.  The ALJ concluded that reconsideration of the 2003 decision denying Plaintiff's September 2001 applications was barred by *res judicata*. (T at 20).  However, the ALJ found that the 2005 initial determination denying Plaintiff's August 2004 applications could be reopened

---

considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

because less than a year had passed between the date of the notice of initial determination and the date the current applications were filed. (T at 20)(citing 20 CFR §§ 404.988 (a) & 416.1488 (a)).  Accordingly, the ALJ ruled that he could properly determine the issue of whether Plaintiff had been disabled since October 28, 2003, *i.e.* the onset date set forth in the second set of applications, which were filed in August 2004. (T at 20).

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2003.  (T at 23).  The ALJ also found that Plaintiff had not engaged in substantial gainful activity since the applicable alleged onset date of October 28, 2003. (T at 23).  The ALJ determined that Plaintiff had the following impairments considered "severe" under the Act: dysthymic disorder, depressive disorder, and anxiety disorder without agoraphobia. (T at 23).

However, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 24).  The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels and that he was capable of performing his past relevant work as a cook. (T at 25, 30).  Thus, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform and, as such, Plaintiff has not been under a disability, as defined under the Act from October 28, 2003, to the date of the ALJ's decision. (T at 31-32).

As noted above, the ALJ's decision became the Commissioner's final decision on September 26, 2008, when the Appeals Council denied Plaintiff's request for review.  (T

at 9-11).

**2.      Plaintiff's Claims**

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers two (2) principal arguments in support of his position.  First, Plaintiff asserts that the ALJ failed to properly apply the "treating physician rule" when determining his RFC. Second, Plaintiff argues that the ALJ erred by determining that he could perform his past relevant work and by concluding that he retained the RFC to perform a full range of work without consulting a vocational expert.  Both arguments will be addressed in turn.

**a.      Consideration of Treating Sources's Opinions**

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998).

In the present case, Plaintiff points to certain statements by his medical providers, which he contends were entitled to controlling weight pursuant to the treating physician's rule.

### i.     Dr. Suresh Patil

In September 2007, Dr. Suresh Patil completed a Mental Impairment Medical Source Statement, in which he opined that Plaintiff would be unable to meet competitive standards with regard to his ability to remember work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, and ask simple questions or request assistance. (T at 431).

Dr. Patil further indicated that Plaintiff had no useful ability to function with respect to the following abilities: maintain attendance for two hour segment, maintain regular attending and be punctual within customary, usually strict tolerance, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress, and be aware of normal hazards and take appropriate precautions. (T at 431).

The ALJ concluded that Dr. Patil's assessment was "unpersuasive" and entitled to only "minimal weight." (T at 29).  This Court finds that the ALJ's determination in this regard was supported by substantial evidence.

First, as noted by the ALJ, Dr. Patil had only examined Plaintiff on one occasion prior to the September 2007 evaluation.  (T at 426).  The brief treatment history is a factor properly considered when determining the weight to be assigned to the opinion. See Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008).

Second, Dr. Patil's September 2007 evaluation is inconsistent with his earlier evaluation, completed just three (3) months earlier.  In that June 2007 assessment, Dr. Patil noted "no evidence of any psychotic symptoms." (T at 427).  In addition, he gave Plaintiff a Global Assessment Functioning ("GAF") score of 55-60, which indicates only moderate difficulty in social or occupational functioning. See Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *3 n.3 (E.D.N.Y. Aug. 28, 2009); Snyder v. Astrue, No. 07-CV-0763, 2009 WL 3381556, at *2 n.2 (N.D.N.Y. Oct. 16, 2009)("A GAF of 51 to 60 signifies 'moderate symptoms (e.g., flat affect and circumstantial speech occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e .g., few friends, conflicts with peers or co-workers).'")(quoting Diagnostic and Statistical Manual of Mental Disorders-IV-TR, p. 34).

Third, Dr. Patil (and other medical sources, as discussed below) noted Plaintiff's substantial non-compliance with prescribed treatments.  Specifically, Dr. Patil indicated that Plaintiff had "a poor compliance record and sometimes stops his meds all together." (T at 429).  When he is non-compliant, Plaintiff "decompensat[es] and experiences an increase in symptoms." (T at 429).  Pursuant to 20 C.F.R. § 416.930, non-compliance with

9

prescribed medical treatment can be a basis for denial of benefits. See Feliciano v. Barnhart, No. 01 CV 5099, 2002 WL 32096586, at *3 (E.D.N.Y. July 1, 2002)("The SSA Regulations provide that a claimant who fails to follow prescribed medical treatment which would restore her ability to work is typically ineligible for SSI benefits.") (citing Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir.1983) ("a remediable impairment is not disabling")).

Fourth, Dr. Patil's September 2007 assessment is contradicted by other substantial evidence in the record, including a consultative report and treatment notes, as discussed further below, and was therefore not entitled to controlling weight.  See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir.2004)(holding that deference to treating source's opinion was not required "where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record").

Lastly, additional support for the ALJ's rejection of Dr. Patil's assessment of extreme limitations is provided by the State Agency review psychiatrist, who opined that Plaintiff's impairments imposed only mild limitations with regard to his activities of daily living and moderate difficulties with respect to maintaining social functioning, concentration, persistence, or pace. (T at 399).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation

of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

### ii.    Dr. Vilas Patil

In March 2003, Dr. Vilas Patil described Plaintiff's ability to relate to co-workers, deal with the public, interact with supervisors(s), and deal with work stress as "poor." (T at 256). Dr. V. Patil further opined that while Plaintiff had "fair" ability to understand, remember, and carry out simple instructions, his ability to understand, remember, and carry out detailed or complex work job instructions was "poor." (T at 257).

Dr. V. Patil also completed a Mental Impairment Medical Source Statement in July 2006, in which he indicated that Plaintiff was unable to meet competitive standards with regard to the following: maintain regular attending and be punctual within customary, usually strict tolerance, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and deal with normal work stress. (T at 417).  Dr. V. Patil further indicated that Plaintiff was unable to meet competitive standards with respect to his ability to carry out detailed instructions, set realistic goals or make plans independently of others, or adhere to basic standards of neatness and cleanliness. (T at 418).

The ALJ found that Dr. Vilas Patil's July 2006 assessment was entitled to minimal weight, noting that only four treatment notes in the record bore Dr. V. Patil's signature and

that, as to two of those notes, it appeared that Patil merely co-signed the note after another provider met with Plaintiff. (T at 29).  Further, the ALJ indicated that, at the time of the July 2006 assessment, it appeared that Dr. V. Patil had not personally examined Plaintiff in more than a year. (T at 29).

This Court finds that the ALJ's determination was supported by substantial evidence. As described above, the medical source statement form completed by Dr. Vilas Patil indicated very severe limitations.  However, this extreme assessment was contradicted by the treatment notes.  In October 2003, Dr. V. Patil described Plaintiff as "pleasant and cooperative" with "no cognitive deficits noted." (T at 363).  He assigned a GAF of 65, "which reflects '[s]ome mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships.'" Kohler v. Astrue, 546 F.3d 260, 262 (2d Cir. 2008)(quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed.2000)).

A March 2004 note, which Dr. Vilas Patil co-signed, indicated that Plaintiff had "a good remission of symptomatology," albeit with "some limitations in general functioning." (T at 360).  Plaintiff was noted to have "normal general functional abilities," with "limitations associated with poor adaptability, tendencies toward social withdrawal and . . . not being able to maintain significant supportive relationships." (T at 360).  His general knowledge, interpersonal skills, and social skills were described as "adequate." (T at 361).

An October 2004 psychiatric assessment completed by Dr. Stanley Poreba assessed Plaintiff's GAF as 55-60, which (as noted above) indicated moderate symptoms. (T at 358).  A July 2005 discharge summary prepared by Dr. V. Patil noted that Plaintiff had

"dropped out of treatment" and was experiencing depressive symptoms. (T at 372). Upon discharge from Oswego Hospital, Dr. V. Patil noted that Plaintiff was "pleasant and cooperative," with no evidence of psychosis or cognitive defects. (T at 373). Dr. V. Patil assigned a GAF score of 65. (T at 373). As noted above, this suggests mild symptoms, with overall fairly good functioning.

Further support for the ALJ's determination may be found in the consultative report prepared by Dr. Dennis Noia, a consultative psychologist. Dr. Noia indicated that Plaintiff's attention, concentration, and memory skills were "intact" and that his cognitive functioning was "in the average range." (T at 382). According to Dr. Noia, Plaintiff showed good judgment and insight. (T at 382). Dr. Noia concluded that Plaintiff appeared to be capable of understanding and following simple instructions and directions; performing simple and some complex tasks with supervision and independently; maintaining attention and concentration for tasks; regularly attending to a routine and maintaining a schedule; making appropriate decisions; and relating and interacting appropriately with others. (T at 383). Dr. Noia did note that Plaintiff appeared to have difficulty dealing with stress. (T at 383).

As discussed above, additional support for the ALJ's conclusion is found in the State Agency review consultant's assessment. (T at 399).

### iii.    Dr. Esat Cirpili

In August of 2002, Dr. Esat Cirpili completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form. Dr. Cirpili opined that Plaintiff had poor ability to relate to co-workers, deal with the public, understand/remember/carry out complex and/or detailed job instructions, and relate predictably in social situations. (T at 190-91).

This Court finds that the ALJ did not err in failing to give controlling weight to Dr.

13

Cirpili's August 2002 assessment.  First, it pre-dates the relevant disability onset date, which is October 28, 2003.  Although such evidence may have some relevance, the focus on inquiry must be on the actual period of disability at issue.  See  Ward v. Shalala, 898 F.Supp. 261, 263 (D.Del.1995) ("While evidence of her condition prior to the onset date and after the insured date is to be considered by the ALJ in furtherance of evaluating whether the applicant qualifies for benefits, the period between onset of disability and expiration of insured status is the focus of the inquiry.").

Second, for purposes of the form that Dr. Cirpili completed, the classification of "poor" was defined as "seriously limited but not precluded." (T at 190).  Also, Dr. Ciripili characterized Plaintiff's ability to follow work rules, use judgment, interact with supervisors, deal with work stress, function independently, and maintain attention/concentration as "fair," which was defined as "limited but satisfactory." (T at 190).  Dr. Ciripili opined that Plaintiff's mental illness was stabilized due to "med compliance" and that he also had fair ability to understand/remember/carry out simple instructions, behave in an emotionally stable manner, and demonstrate reliability. (T at 191).

Third, during the same period, Dr. Cirpili assessed Plaintiff's GAF as 65, which is indicative of more mild symptoms. (T at 267, 365).  Kohler, 546 F.3d at 262.

Fourth, as outlined above, the treatment notes from other providers, which were made during the period of time at issue, indicated a level of functioning consistent with mild to moderate limitation.  Accordingly, this Court finds no error in the fact that the ALJ did not afford controlling weight to Dr. Cirpili's assessment.

### iv.    Overall Assessment

When evaluating the severity of mental impairments, the regulations require the ALJ

14

to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The special technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. See 20 C.F.R. § 404.1520a(c)(3).   These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).   A finding of marked limitations in two or more of the areas will generally establish that the claimant is disabled.   Paratore v. Comm'r of Social Security Admin., No. 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. Feb. 25, 2008).

Pointing to the opinions of Drs. Suresh Patil, Vilas Patil, and Esat Cirpili, Plaintiff argues that the evidence demonstrates that he had marked limitations with respect to social functioning, concentration, and activities of daily living.

The ALJ concluded that Plaintiff has mild restriction with respect to activities of daily living, moderate difficulties as to social functioning and concentration/persistence/pace, and no repeated episodes of decompensation of extended duration. (T at 24).

For the reasons outlined above, this Court finds that the ALJ's assessment was supported by substantial evidence.  The treatment notes from Plaintiff's treating providers consistently indicated only mild to moderate limitations in functioning.  The assessments of the consultative examiner and state review consultant supported the ALJ's findings. There are also numerous indications in the record that Plaintiff had been non-compliant or

cavalier with respect to treatment and that his condition and functioning materially improved when he complied. (T at 354, 363, 372, 407-408, 411-13, 423, 425).  The ALJ also noted several instances in which the Plaintiff appeared to overstate or exaggerate his limitations. (T 27-29).  Plaintiff was also noted to be "preoccupied with getting Social Security Disability" and indicating that if he did not receive such benefits "he will need to get a job." (T at 423).

In light of the foregoing, this Court finds that the ALJ's assessment with regard to Plaintiff's level of functioning as to each of the areas set forth pursuant to the special technique was supported by substantial evidence.

### b.     Ability to Perform Past Relevant Work/Vocational Expert

"[I]n the fourth stage of the SSI inquiry, the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citing SSR 82-62). A claimant is not disabled if he can perform her past relevant work, either as he actually performed it, or as it is generally performed in the national economy. See SSR 82-61; Jock v. Harris, 651 F.2d 133, 135 (2d Cir.1981)(noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

"Determination of the claimant's ability to perform past relevant work requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and

mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the <u>Dictionary of Occupational Titles</u>, etc., on the requirements of the work as generally performed in the economy." <u>Speruggia v. Astrue</u>, No. 05-CV-3532, 2008 WL 818004, at *12-*13 (E.D.N.Y. Mar. 26, 2008).

In this case, the ALJ concluded that Plaintiff could return to his past relevant work as a grill and prep cook. (T at 30).  The ALJ determined that Plaintiff had the RFC to perform the basic mental requirements of competitive remunerative unskilled work, which "include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  The ALJ recognized that the <u>Dictionary of Occupational Titles</u> ("DOT") classifies several cooking jobs as semi-skilled or skilled and that such jobs would require the performance of more than basic mental work activities. (T at 30).  However, the ALJ identified a cooking job that he described as "more simplified" and which would not require more than basic work activities.  Because the ALJ found that Plaintiff could perform a simplified version of his past relevant work as a cook, he determined that Plaintiff was not disabled at the fourth step in the sequential analysis. (T at 30).

Plaintiff attacks this finding on two grounds.  First, he argues that the ALJ overestimated Plaintiff's mental abilities by failing to credit the assessments of his treating providers.  This argument fails for the reasons stated above.  Second, Plaintiff notes that the "more simplified" cooking job cited by the ALJ – Cook Helper, Pastry (DOT 313.687-010) is actually a semi-skilled job.  However, the citation to this particular job appears to be a typographical error.  As the Commissioner notes, the citation for kitchen helper, an

unskilled position is 318.687-010, which has only one digit different than the cite referenced by the ALJ – 313.687-010. In any event, notwithstanding any error in the ALJ's citation to the DOT, clerical or otherwise, the fact remains that an unskilled cooking position is listed in the DOT, which has job duties similar to those performed by Plaintiff during his past relevant work.

Accordingly, this Court finds no reversible error with regard to the ALJ's determination that Plaintiff could perform his past relevant work.

Lastly, Plaintiff contends that the ALJ erred by failing to consult a vocational expert to determine whether Plaintiff's decreased ability to tolerate stress eroded his occupational base. This argument is unavailing.

Because the ALJ found Plaintiff capable of returning to his past relevant work at step four of the sequential evaluation, he was not required to proceed to step five to consider vocational factors such as age, education, and work experience. See 20 C.F.R. §§ 404.1560 and 416.960; see also Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir.1982).

Moreover, even assuming arguendo that a step five analysis was necessary, the ALJ properly performed that analysis. At Step 5, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).

In this, and other SSI and DIB cases, the second part of this two part process is generally satisfied by referring to the applicable rule set forth in Medical-Vocational Guidelines found at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"). See Bapp v.

<u>Bowen</u>, 802 F.2d 601, 604 (2d Cir.1986).

An ALJ may rely on the Grids for guidance in determining the range of work available to a claimant, even if the claimant has non-exertional limitations, as long as those limitations do not significantly erode the range of work that would otherwise be available to the claimant. <u>Id.</u> at 605.

In the present case, the ALJ determined that although Plaintiff's ability to perform work at all exertional levels had been compromised by his non-exertional limitations, those limitations had little or no effect on the occupational base of unskilled work at all exertional levels. (T at 31).  The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." <u>Bapp</u>, 802 F.2d at 603.  Rather, exclusive reliance on the Grids will be deemed inappropriate only where the non-exertional impairments "*significantly* limit the range of work permitted by his exertional limitations." <u>Id</u>. at 605-06 (emphasis added). "A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" <u>Id.</u> at 606.

For the reasons set forth above, the Court finds that the ALJ's conclusion that Plaintiff's work capacity was not significantly diminished by his limitations was supported by substantial evidence.  As such, the ALJ was permitted to rely on the Grids in the second part of the two parts of step five to assess that there were a significant number of jobs in both the national and local economy that Plaintiff could perform. <u>See</u> SSR 83-10; SSR 85-15; <u>see also</u> <u>Bapp v. Bowen</u>, 802 F.2d 601, 605 (2d Cir.1986).

19

Thus, the Court finds the ALJ properly relied on the Grids when he made his determination that a significant number of jobs existed in the national and local economy that Plaintiff could perform. Further, the ALJ was not required to engage the services of a vocational expert to assess the number of jobs in the national and local economy, because under the applicable guidelines, the jobs available to Plaintiff were not significantly eroded by his limitations.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds that substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error. Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed

Respectfully submitted,

Dated:   November 10, 2009

      Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir.

21

1995); <u>Wesolak v. Canadair Ltd.</u>, 838 F.2d 55 (2d Cir. 1988); <u>see</u> <u>also</u> 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. <u>See</u> <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

November 10, 2009

Victor E. Bianchini
United States Magistrate Judge